John Dennis v. The Citizens Insurance Co., of Pittsburg, Pa., Appellant.

*Contract—Compromise agreement—Binding effect of.*

A compromise fairly entered into discharges the original cause of action which cannot be recurred to by either party. The settlement of the controversy imports a consideration.

*Insurance—Adequate notice of total loss.*

A notice in writing of the total loss of an insured building is sufficient proof of loss if followed by a denial of any liability by the company, coupled with the assertion that the company would pay all that they would be obliged to pay if they recognized the validity of the policy as a settlement of loss.

VOL. IV—15

*Question for jury—Insurance—Compromise settlement—Misrepresentations.*

A notice of total loss having been given an insurance company and a compromise settlement having been agreed upon, in an action on the policy the question is properly for the jury when the evidence, though conflicting, tends to show that the plaintiff has been induced to agree to the settlement by reason of misrepresentations made by the representative of the insurance company.

Argued Jan. 20, 1897. Appeal, No. 21, Jan. T., 1897, by defendant, from judgment of C. P. Luzerne Co., Oct. T., 1893, No. 893, on verdict for plaintiff. Before RICE, P. J., WILLARD, WICKHAM, BEAVER, REEDER, ORLADY and SMITH, JJ. Affirmed.

Assumpsit on policy of insurance. Before LYNCH, P. J.

It appeared from the evidence that plaintiff was the owner of an old frame house purchased by him in 1891 for $100. He insured it with defendant company for $400, and during the term of the policy it was totally destroyed by fire. Notice of the loss was given to the agent of the company in writing. It was alleged by the defendant and evidence given tending to prove the allegation that in an interview with the adjuster plaintiff conceded that the house cost originally $100 and that he had spent from $66.00 to $90.00 in repairs, that it rented for from $10.00 to $12.00 per month, that after some discussion as to the value of the house the insured agreed to accept $154 as its present valuation, whereupon an affidavit of proof of loss and settlement was made and sworn to. Subsequently a check was sent for the $154 which plaintiff refused to accept, demanding the full amount of the insurance. The plaintiff's testimony, which was contradicted, tended to show that the compromise settlement was obtained from him upon misrepresentations as to the status of the policy and his rights under it, plaintiff stating that the company's agent, Mr. Paine, had told him : " That $154 was all the company would pay." " I says, why, Mr. Paine ? " and he said " A boy insured that house of yours, a boy in Pittston, Lance's office boy insured that house of yours, and for that matter you would not get one cent." He said : " You might as well take this, take this or take none. He just said that right out."

The trial judge left the question to the jury to determine

whether the settlement, otherwise binding, had been effected by misrepresentations or deceit.

Verdict and judgment for plaintiff for $456. Plaintiff appealed.

*Errors assigned* were (1) in charging the jury as follows: " The contract is in the policy (unless there was a new one made at another time) and by it these parties must be judged unless the terms of it were waived or a new one entered into. The proof of loss is for the purpose of giving information to the company in order that it may be advised of the nature and character of the loss and it may not be imposed upon. It is not a contract or agreement between the parties. If a contract in one sense of the word it is not a solemn agreement entered into and signed by both parties stipulating what each party shall do; it is merely an endeavor on the part of the assured in accordance with the terms of the policy to carry out the directions laid down in the policy which requires he shall make proof of loss, but it also provides that the company shall not be bound by the amount of money named by the assured in the proof of loss nor the quality or number of articles named in the list. If these parties had entered into and signed a solemn agreement in order to set such agreement aside or alter or vary its terms it would be necessary that plaintiff prove it was signed on his part by means of fraud, accident or mistake. The proof of loss is more in the nature of a receipt or a declaration made by the party, and if the jury is satisfied he was deceived or made the statement in ignorance of his legal rights concerning the matter he may change or correct the statement. For instance, if a man gives a receipt in full in settlement of a claim and states in the receipt that he received but a part or that he received the whole sum due he may afterwards in court prove that at the time he gave the receipt he was deceived or mistaken or misled."

(2) In charging the jury as follows :—" But it is not upon the written paper, as I understand counsel for the defense, defendant relies, but upon an alleged agreement made between the adjuster of the company and Mr. Dennis when, they say, Mr. Dennis fully understood his legal rights under the terms of the policy. If this position is correct Mr. Dennis should be compelled to stand by it. If without mistake, deceit or fraud,

and understanding fully his legal rights under the contract of insurance, he settled or agreed to settle with the insurance company, he should be compelled to stand by it.   You will consider the circumstances of the parties as they existed at the time,— Mr. Dennis' occupation; apparent intelligence; business opportunities for understanding his rights ; where he was, and the circumstances under which he went there ; the business ability of the adjuster.   Mr. Dennis contends that the adjuster said to him the true basis upon which the loss must be settled was what he paid for the property, the amount expended for repairs, minus the depreciation, which left $154, and if he didn't take that he would get nothing, because a boy, a minor, made the policy.   What is the truth of this ?   If it be true such was not the actual cash value of the building at the time it was destroyed then it was not the true basis of value.   The policy sets out an ascertainment or estimate according to the actual cash value at the time of the loss.   If such value and the actual cash value as shown were the same it would not matter.   It is not so much that in the ordinary sense of the word he was deceived or tricked, as that he was misinformed as to his legal rights in this particular, and relying upon this made the settlement.   The defendant contends that while it did settle or adjust the loss Mr. Dennis agreed to accept the amount on the basis of what he paid for the property plus amount paid for repairs less depreciation ; that he was advised and fully understood the terms of the settlement, and it was not at the solicitation of the adjuster ; the adjuster advised him fully of his rights and said go home, consider this matter for a few days, advise with your friends and if not satisfactory we will have appraisers appointed and appraise the loss.   If you accept this view Mr. Dennis should be compelled to stand by his bargain.   Whether a good or a bad one, it was his business affair, and he should receive $154 with interest from about the first of July, 1893.   But suppose you base your verdict upon the version given by the plaintiff. The alleged agreement could be set aside and you should try the case precisely as if they had not attempted to agree at all."

(3) In not affirming defendant's first point :—" Upon all the evidence adduced, the plaintiff is not entitled to maintain this action and the verdict should be for the defendant.   *Answer :* I decline to so charge."

(4) In not affirming defendant's second point:—" The undisputed evidence being that the defendant, by its adjuster, H. E. Paine, agreed to, and in accordance with the conditions of the policy of insurance, met the plaintiff on the 29th day of April, 1893, and attempted to agree upon the amount of loss or damage suffered by the insured, and in the afternoon of that day did agree, and in pursuance of the agreement so made the plaintiff made his proof of loss in which he said, ' the total amount I claim and expressly agree to accept from said insurance company, in full satisfaction and discharge of said loss or damage is $154 '—and swore to the same April 29, 1893, and it also being undisputed that the defendant agreed to pay said $154— by a draft in about a week from the 29th day of April, 1893, and the defendant did pay the same by delivery of said draft to the plaintiff within the time agreed, or offered to deliver the same, the terms of the settlement were complete and binding upon the parties and the plaintiff is not entitled to a verdict in this action, at any rate he is not entitled to more than $154. *Answer:* I decline to so charge."

(5) In its answer to defendant's third point:—" That a contract or agreement cannot be avoided or set aside on the ground of duress or undue influence unless the duress or undue influence was operating on the mind of the party at the time the agreement was made. The constraint which takes away free agency and destroys the power of withholding assent to a contract must be one which is imminent and without means of prevention, and be such as would operate on the mind of a person of reasonable firmness of purpose. And a threat to withhold payment of a debt or to refuse performance of a contract which may be redressed by legal proceeding will not amount to duress per minas. *Answer:* That I believe is the law, but it does not apply to this case. If the plaintiff is entitled to recover more than the $154, it is because he made the alleged agreement by reason of his ignorance of his legal rights under the circumstances, and not because he was forced or because of duress."

(6) In not affirming defendant's fourth point: "That to overturn or set aside a written agreement or settlement duly signed and sworn to by the party on the allegation of fraud or mistake, the evidence must be clear, precise and satisfactory,

and the evidence must preponderate in favor of such allegation, and as there is no such evidence or preponderance of testimony the settlement made by the defendant in company with the plaintiff, John Dennis, on April 29, 1893, must stand. *Answer:* I decline to so charge. If this were an agreement between the parties binding both of them, the point would be well taken."

(7) In not affirming defendant's sixth point: "That under the conditions of the policy it was the duty of the insurer and the insured to ascertain and estimate the amount of loss or damage; it was therefore the duty of the company to do what its adjuster did to reach an agreement as to the amount of loss or damage suffered by the plaintiff, and not until an effort to agree fails can either party demand the submission of the dispute as to damage to arbitrators, and not till a disagreement exists between the insured and the insurer can the insured disregard the provision providing for arbitration. The first remedy is to attempt to agree. Second, if a disagreement result, then arbitrators are to be chosen. These remedies are not optional to either party, and if an agreement be reached and the insured attempts to repudiate the agreement he cannot sue upon his policy until the first expresses his willingness to give the company an opportunity to submit the question of amount of loss or damage to arbitration. *Answer:* I decline to affirm the point, and for this reason: It is their first duty to attempt to settle. They did so according to the evidence of both parties. The plaintiff claims he afterwards repudiated the agreement, or the alleged agreement, and that as far as he could notified the company first by going himself with Mr. Hollister to the office and subsequently sending a notice to the company before suit was brought. If the company had then seen fit to ask for arbitration it could have done so. It stood upon the alleged agreement and cannot now repudiate it and ask for arbitration."

*W. W. Watson,* with him *G. L. Halsey,* for appellant.—The plaintiff is bound by the agreement of compromise and settlement: Wagner v. Ins. Co., 143 Pa. 351; Turnpike Co. v. Hendel, 11 S. & R. 122; McGonigle v. Ins. Co., 167 Pa. 364; Wood on Fire Ins., 2d ed. sec. 482.

If there were a failure to settle by agreement then the next step by the terms of the policy was to submit the matter to arbitrators: Boyle's Sons v. Ins. Co., 169 Pa. 357.

A promise by a creditor whose claim is unliquidated or contingent to accept a certain sum in satisfaction thereof is sufficient consideration to support the debtor's promise to pay said specified sum: Chamberlain v. McClurg, 8 W. & S. 31; Laird v. Campbell, 92 Pa. 470; Brockley v. Brockley, 122 Pa. 1.

The company had laid itself open to new liability by agreeing to the settlement: Wagner v. Ins. Co., 143 Pa. 350; McGonigle v. Ins. Co., 167 Pa. 364.

There is no evidence by Dennis or anybody else that he was deceived or tricked, and that he was misinformed as to his legal rights or that he relied upon any such information in making the settlement.

*P. A. O'Boyle*, with him *John McGahren*, for appellee.— Independently of the legal construction of the paper of settlement which appears to us conclusive in favor of the plaintiff's right to recover his full demand, we think the court was clearly justified in submitting the case to the jury on the question of deceit and misrepresentation on the part of the adjuster.

Opinion by Reeder, J., April 12, 1897:

The plaintiff had his house insured in the defendant company for $400. It was destroyed by fire. After the loss the plaintiff and the defendant's agents met in Scranton where a proposition was made to the plaintiff to settle for $154, which was agreed to by the plaintiff and a writing executed as follows: " The total amount I claim and expressly agree to accept from said Insurance Company in full satisfaction and discharge of said loss or damage is $154." An affidavit was made to the above writing by the plaintiff and it was appended to the plaintiff's proof of loss. The defendant sent a draft about a week after the execution of the above writing for $154 which the plaintiff refused to accept, and brought suit for the recovery of the entire amount of the insurance. The plaintiff claimed upon the trial that although he had made an agreement to settle for $150 such agreement was procured from him by the misrepresentation and fraud of defendant's agents and he was therefore not bound by it. This and the actual value of the building destroyed were the only two questions at issue at the trial in the court below, the latter question being one purely of fact

was properly submitted to the jury and passed upon by them. The only question for our determination here is whether the evidence of the plaintiff as to fraud, misrepresentation and mistake was sufficient to enable him to avoid his agreement of settlement if believed by the jury. If without mistake, fraud, or deceit he agreed to settle he is compelled to abide by it.

The authorities cited by the appellant clearly establish this as the law, and also that there was good and sufficient consideration for the defendant's promise to pay the $154. The plaintiff however testified that when he called at the defendant's agent's office the agent being also an adjuster for the company at Scranton he notified the company in writing of the total loss of the building by fire. This in the case of a building totally destroyed by fire was sufficient proof of loss, if followed, as is alleged by the plaintiff in this case, by a denial of any liability by the company on the policy and the statement that the company would pay all they would be obliged to pay if they recognized the validity of the policy, as a payment of loss : Vide Roe v. Dwelling House Ins. Co., 149 Pa. 94 (and cases there cited) ; Weiss v. American Ins. Co., 148 Pa. 349 ; Fritz v. Lebanon Ins. Co , 154 Pa. 384 ; McGonigle v. Susquehanna Ins. Co., 168 Pa. 1 ; Dowling v. Merchants Ins. Co., 168 Pa. 234. It is claimed however that the loss in figures is stated in this first proof of loss to be but $154, and that therefore there could be no recovery for any amount in excess of that amount. We do not so understand the law unless the statement as to that being the amount of loss was the voluntary act of the plaintiff, and not procured from him by fraud and deceit. The company was notified in writing of the total destruction of a building insured by it for $400. This was sufficient to protect the defendant, and all that the law required of the plaintiff. If by its own misrepresentation it induced him to declare in the same writing that his loss was but $154, it could not afterward declare that the proof of loss relieved it of all liability upon the policy in excess of that amount. The plaintiff testifies that a few days prior to the time when he made out this proof of loss the agent and adjuster induced him to state his loss at $154 by declaring that his policy was void because written by a boy not yet twenty-one years of age and he therefore could recover nothing upon it, as a minor could not make a contract binding upon the company,

but he the agent and adjuster would see that the company would do what was right and just in the matter. He told the plaintiff also that he could recover only what he had paid for the building, it being an old building standing upon leased ground, together with the value of repairs he had put upon it amounting to $190 less the amount of depreciation from wear and tear during the time he owned it, which would make the entire amount he could recover for it $154. He told the adjuster and agent that the building was worth $600, that he rented it for $10.00 a month; but the adjuster said that made no difference, that $154 being the amount he had paid for the property less the depreciation, that was all he could legally recover on the contract even if he could recover anything. This was all of course denied not only by the adjuster but by two to three other witnesses who corroborated him, but it raised a question of fact to be determined by the jury, and the jury decided the question submitted to them in favor of the plaintiff. The finding by the jury is that these figures were inserted in the proofs of loss declaring the total loss of the building by fire and the agreement to settle made, by the misrepresentation and deceit of the defendant. Was there sufficient in the plaintiff's testimony to justify the submission of that question to the jury? Of this we have no doubt. The plaintiff's testimony if believed, and the jury did believe it, was sufficient to relieve him from the effect of his signing the contract to settle, as well as to reform the figures he was induced to insert as the amount of his loss in the proofs of loss. We find no error in this record.

Judgment affirmed.